IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Charles Tyson, #114460, a/k/a<br>Charles Kevin Bruce Tyson,<br><br>     Plaintiff,<br><br>  vs.<br><br>Willie L. Eagleton, Warden of Evans<br>Correctional Institution; and Jon E.<br>Ozmint, Director of S.C. Department of<br>Corrections; Sharon Patterson; and<br>Ethel Redfern,<br><br>     Defendants. | Civil Action No. 6:06-1686-PMD-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

  This matter is before the court on the defendants' motion to dismiss and motion for summary judgment. The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that the defendants violated his constitutional rights by failing to give him notice and a hearing before placing him in "lock-up."

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

  Defendants Eagleton and Ozmint filed a motion to dismiss on September 6, 2006. By order filed September 8, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response on October 23, 2006. On March 15, 2007, the plaintiff was allowed to

amend his complaint, adding defendants Sharon Patterson and Ethel Redfern. On April 6, 2007, a motion for summary judgment was filed on behalf of all four defendants. By order filed April 9, 2007, pursuant to *Roseboro*, 528 F.2d 309, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response on May 16, 2007.

## **FACTS PRESENTED**

The plaintiff is currently an inmate at Evans Correctional Institution in Bennettsville, South Carolina. According to an incident report, on July 5, 2005, during a routine shakedown, correctional officers found a cell phone, battery, and charger in the toilet in the plaintiff's cell (pl. resp. m. to dismiss, ex. 4). A Pre-hearing Detention ("PHD") form (also referred to as a "lock-up form") dated July 5, 2005, states that the plaintiff was given a copy of the notice containing the reason for his placement in lock-up, but the plaintiff refused to sign the form. Two officers signed that they witnessed the plaintiff refuse to sign the form (pl. resp. m. to dismiss, ex. 2). On July 12, 2005, the plaintiff was notified that a disciplinary hearing would be held on July 20, 2005, on the charge of possession of a cell phone. The plaintiff was found guilty and sentenced to, among other things, 180 days of administrative segregation. He signed that he received a copy of the disciplinary report on July 20, 2005 (pl. resp. m. to dismiss, ex. 5).

The plaintiff alleges that he was removed from the general prison population on July 5, 2005, and placed on lock-up without notice and without a hearing as to why he was placed there. He claims that he wrote a "Request to Staff" on July 11, 2005, and again on July 20, 2005, advising defendant Eagleton, the Warden of Evans Correctional Institution, of the situation. The plaintiff further alleges that on or about July 22, 2005, defendant Eagleton responded to these requests, noting that the plaintiff had received 180 days of disciplinary detention (pl. resp. m. to dismiss, ex. 1). The plaintiff asserts that

although defendant Eagleton did respond to this grievance, the response did not adequately address his concerns. In addition, the plaintiff asserts that employees of Evans fabricated the PHD form and simply wrote on it that he refused to sign it (pl. resp. m. to dismiss, ex. 2). The plaintiff alleges these employees had to have fabricated the PHD form because a lock-up checklist indicated that he had signed a lock-up form (pl. m. to dismiss, ex. 3). In addition, the plaintiff asserts that defendant Eagleton allowed this to take place because of a personal vendetta against him. He claims that as a result of being placed in lock-up without the required notice, his due process rights were violated. The plaintiff further asserts that he sent a letter to defendant Ozmint on August 10, 2005, concerning this matter, and that this letter went unanswered. In addition, the plaintiff filed a Step 2 grievance with SCDC headquarters. The grievance was denied due to the evidence that the plaintiff had been notified of the reason for his pre-hearing detention, but he refused to sign for the notice. Therefore, the plaintiff claims that defendant Ozmint also violated his due process rights by ignoring the checklist that stated the plaintiff had in fact signed a lock-up form.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations,

3

a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

**ANALYSIS**

The defendants first argue that the plaintiff failed to exhaust his administrative remedies. However, for purposes of this motion, the court will assume that the plaintiff did exhaust his administrative remedies and will proceed to the merits of his claims.

"To prevail on either procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). It has been noted that the "due process clause protects against only the most egregious, arbitrary governmental conduct – that is, conduct that can be said to 'shock[ ] the conscience.'" *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (citation omitted). The clause is invoked only "when a Fourteenth Amendment-protected liberty interest is at stake." *Berrier v. Allen*, 951 F.2d 622, 624 (4th Cir. 1991). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States. The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original prison sentence." *Id.* The Supreme Court has recognized that the "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." However, these liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). Thus, it has been held that the Due Process Clause does not independently create "'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters,' … because 'administrative segregation is the sort of confinement that inmates should

5

reasonably anticipate receiving at some point in their incarceration.'" *Berrier*, 951 F.2d at 624 (citation omitted).

Under SCDC policy, a PHD notice is to be served within 72 hours of an inmate being placed in administrative segregation. The inmate must be given the opportunity to sign the form, and if he will not sign the form, two SCDC employees must witness the form to show that it was served to the inmate (SCDC Policy/Procedure OP-22.12, § 1.3). In the present action, the plaintiff received 180 days of disciplinary detention. As evidenced in the exhibits attached to the plaintiff's initial complaint filed June 5, 2006, the plaintiff refused to sign the PHD form, which was witnessed by two correctional officers. The plaintiff has submitted no evidence that this form was fabricated. A hearing before DHO Sharon Patterson was held on July 20, 2005, at which time the plaintiff was found guilty based upon the officer's report and the evidence. Based upon the foregoing, the plaintiff has failed to set forth any evidence sufficient to create a genuine issue as to any material fact as to any alleged violation of his constitutional rights.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

s/William M. Catoe<br>
United States Magistrate Judge

June 25, 2007

Greenville, South Carolina

6